## FT. DEARBORN COAL CO. v. BORDERLAND COAL SALES CO.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1925.)

No. 4313.

**1. Frauds, statute of ⬤=84—Contract for sale of coal held void as within the statute.**

A written order for certain cars of coal, sent by defendant to plaintiff, was rejected as not in accordance with the previous oral agreement, and was sent back for correction, but was not returned. Plaintiff, however, shipped some of the cars to a customer of defendant, as contemplated by the contract, but they were rejected. *Held*, that such shipment must be regarded as having been made under the oral contract which, the shipment not having been accepted, was void under Gen. Code Ohio, § 8384(1).

**2. Frauds, statute of ⬤=89(3)—Direction by broker of shipment of coal direct to customer held not an acceptance of delivery which took the contract out of the statute of frauds.**

Where defendant, which was a coal broker, and known to be such by plaintiff, in making an oral contract for coal directed its shipment direct to a customer, such direction was not an acceptance of delivery or the exercise of any act of ownership, which took the contract out of the statute of frauds; the shipment having been rejected by the customer.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

At Law. Action by the Ft. Dearborn Coal Company against the Borderland Coal Sales Company. Judgment for defendant, and plaintiff brings error. Affirmed.

The Ft. Dearborn Coal Company brought action to recover damages for breach of a contract for the sale of 37 cars of Imperial New River mine run coal, which it claimed it sold to the defendant, and upon its order delivered 32 cars to the Chicago By-Products Coke Corporation, Hawthorne, Ill., which corporation refused to unload the same, and defendant refused to make disposition thereof, to the damage of the plaintiff in the sum of $2,486.63, and that, in addition thereto, it was compelled to pay the sum of $3,621.44 for additional freight, car service charges, demurrage charges, and switching charges. The defendant answered denying that it made any contract whatever with the plaintiff to purchase 37 cars of coal to be consigned to the Chicago By-Products Coke Corporation, and denies that plaintiff delivered 32 cars of coal to the defendant or to the Chicago By-Products Coke Corporation on defendant's order, and further answering

says that, if a contract was entered into between plaintiff and defendant that the contract was an oral contract for the sale of goods of the value of more than $2,500, and void under section 8384 (1) of the General Code of Ohio.

The plaintiff for reply denies the allegation in the answer that no note or memorandum in writing of said contract was signed by the parties to be charged, and further avers that the buyer did accept and actually receive part of the goods covered by the contract. At the close of the evidence offered on behalf of the plaintiff, the court on motion directed the jury to return a verdict for the defendant, to which the plaintiff excepted.

It appears from the record: That C. L. Pierce, district manager of the Ft. Dearborn Coal Company, located in Cincinnati, Ohio, had some oral negotiations with H. L. Bonnell, representing the Borderland Company of Cincinnati, for the purchase of this coal. That Bonnell told Pierce he had taken orders for coal "around 20 per cent. volatile," and that in his (Bonnell's) estimation "that can mean anything between 15 and 25 per cent." That Pierce told Bonnell he had been instructed not to guarantee the volatile in this coal, and therefore would not make a sale to him on guaranty of 20 per cent. volatile. That Bonnell then said, "If we can get together on the price I can handle your coal." Thereupon Pierce made a sales memorandum order signed by himself, upon which appeared the following: "Volatile not guaranteed." This was shown to Bonnell, but no copy of it was given to him. Following these verbal negotiations, and on the same day, the Bonnell Coal Company sent to the Dearborn Company its written order covering these 37 cars of New River coal, a part of which is as follows: "Guaranteed to run under 1 per cent. sulphur, 8 per cent. ash, and around 20 per cent. volatile matter. To be applied against their 150-car order." This reached the Dearborn Company the following morning, and as soon as it was received Mr. Pierce called Mr. Bonnell over the telephone at the Borderland office and told him that he was in receipt of the Borderland's order containing the guaranty "around 20 per cent. volatile," and that "we did not want it to appear on anything in our office that we had guaranteed the volatile around 20 per cent." That Bonnell said to him, "Well, I talked to you about that when I was in your office, and I understand what the coal is, and you understand what I mean by around 20 per cent.,"

to which Pierce replied, "I might understand what you mean by around 20 per cent., but I told you we would not guarantee the volatile, and I am sending this order back to you, this acknowledgment back to you for correction." Pierce further testified that he then put this written memorandum or order in an envelope, addressed it to the Borderland Coal Sales Company, and put it in the mail chute. This written order in reference to this contract, which was rejected by the Dearborn Company and returned to the Borderland Company was not corrected and returned, nor was any other written order or memorandum in writing, signed by the Borderland Company, executed or delivered to the Dearborn Company. On the next day Pierce and Bonnell had some further talk over the telephone, in which Pierce stated to Bonnell that 32 cars of coal were then in transit to the Chicago By-Products Coke Corporation for the Borderland account, and that Bonnell said "he would handle it," and that Mr. Pierce then said he would withhold further shipments for later instruction.

Walter K. Sibbald, of Cincinnati, Ohio, for plaintiff in error.

Charles J. Hunt, of Cincinnati, Ohio (Hunt, Bennett & Utter, of Cincinnati, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is clear, from this evidence introduced by the plaintiff, that there was no written contract and no written memorandum of any claimed verbal contract signed by the Borderland Company. So far as appears from this record, the Borderland Company would have been justified in the belief that the rejection and return of this written order ended the transaction. It necessarily follows that whatever shipments were made, were made in pursuance of this verbal contract after the written memorandum or order had been rejected. It is also clear that the coal was not accepted by the Borderland Company or the Chicago By-Products Corporation, the consignee, but on the contrary was rejected by the consignee because of excess volatile matter as, under the written memorandum rejected by the

Dearborn Company, the defendant and the By-Products Company had a right to do.

[2] It is claimed, however, that the Borderland Company exercised acts of ownership over this coal by reselling it at a profit. This contention is not sustained by the evidence. The Borderland Company is a coal broker, and was known to be such by the plaintiff. The order to ship to the By-Products Company was a part of the original oral negotiations, and contemplated no delivery whatever to the Borderland Company, but on the contrary delivery by the Dearborn Company as consignor direct to the consumer, the By-Products Corporation, as consignee. It was all part and parcel of the same transaction. In this respect it differs materially from the cases cited in the brief of counsel for plaintiff in error.

It is further claimed that, after 32 cars of this coal had been shipped upon this verbal contract, the Borderland Company, through Bonnell, assented to become the owner of these specific goods. This claim is based on the testimony of Pierce that the next day after he had rejected and returned the written memorandum of contract he told Bonnell over the telephone that 32 carloads of this coal were then in transit, and that Bonnell said "that he would handle it." In view of the facts known to the plaintiff at the time, that the Borderland Company was not buying this coal for its own use, but was buying it as a means of filling its existing coal broker's contract with the By-Products Company, that the final delivery and the first opportunity for inspection would be on the tracks of the By-Products Company, and that the coal would continue in the possession of the carrier until final delivery, the statement by Bonnell that he would "handle it" cannot be construed as an assent by the Borderland Company, before delivery, to become the owner of the coal shipped under the verbal contract, even if the rejection and return of the written order and failure of defendant to modify and return the same would not have the effect of canceling the verbal order and ending the transaction. However, whether or not this promise to "handle it" amounts to an acceptance under section 8384 (3), there was not, under the recited circumstances, the "actual receipt" which section 8384 (1) requires in addition to acceptance.

Judgment affirmed.